**J. & W. CORPORATION, Petitioner,**

**v.**

**M. A. BALL, Respondent.**

**No. A–11629.**

Supreme Court of Texas.

Jan. 11, 1967.

Rehearing Denied March 1, 1967.

Elliott & Nall, Ralph Elliott, Sherman, for petitioner.

Charles E. Hughes, Sherman, for respondent.

GREENHILL, Justice.

M. A. Ball was injured when the wheel of a truck being operated by an employee of the J. & W. Corporation rolled or spun over his left hand. Trial was to a jury which found defendant's agent to have been negligent. The jury acquitted Ball of contributory negligence but found, among other things, that Ball had assumed the risk. Both parties filed motions for judgment, and the plaintiff's motion was granted. The Court of Civil Appeals affirmed. 404 S.W.2d 616.

The defendant corporation operated the Texoma Truck Stop in Denison, Texas. It sold fuel for trucks, repaired flat tires, and made minor repairs. The B & J Garage, a separate business, was located about 200 yards from the Truck Stop. The plaintiff Ball had worked at the garage for about six weeks and had bought it about three days before the accident. He slept at the garage and was available for work there or at the Truck Stop.

On the night in question, a truck pulled into the vicinity of the Truck Stop. The driver wanted to have his truck's fan belt tightened and to have a tire repaired which was going flat. The driver then went to the B & J Garage to ask if "they" could repair his fan belt. Ball said that he could. The driver then turned the truck over to Billy Gilbert, an employee of the defendant Truck Stop, who set about to repair the tire. Meanwhile, Ball took his tools and walked over to the Truck Stop.

The vehicle involved was described as a tandem axle truck tractor with dual wheels on each side of each axle. As will be hereinafter discussed, the number and location of the wheels is not made clear. The truck tractor, here called the tractor, pulled a trailer loaded with brick. The flat was on a left-rear tire of the tractor. Apparently there were four wheels and tires at the left rear. The tires in tandem were about 10 inches wide and there was about 5 or 6 inches between the tires. Gilbert had backed the tractor and trailer into an enclosed "grease stall." The axle of the tractor was too low for the use of a jack. Gilbert was therefore attempting to back the tractor's rear wheels onto two blocks of wood so a jack could be used. Each block consisted of two 2 x 6 inch pieces of wood nailed together, thus making a 4 x 6. They were about two feet long. The top piece was a little shorter to give the blocks a slant upward. Gilbert had placed his 15-year-old stepson, Bobby Harvey, on a small step ladder along the wall of the grease stall to assist him. Gilbert watched Bobby in the rear view mirror, and Bobby was to signal Gilbert when the wheels were on the blocks. Gilbert had made one unsuccessful attempt to back the wheels onto the blocks (the blocks had slipped in an effort to effect traction against the tire) when the plaintiff Ball volunteered to help.

When Ball arrived at the Truck Stop and in the vicinity of the truck, he put his tools down in front of the cab of the tractor. He was to begin work on the fan belt when Gilbert got the wheels on the blocks. Up to this point, the testimony of the witnesses was in agreement. After this point, the three witnesses were unable to agree.

Billy Gilbert, the defendant's employee who was in the cab of the tractor, testified that he saw Ball with his tools at the front of the tractor. He told Ball that Ball could start with his repairs when the wheels were on the blocks. He did not ask Ball for help, did not know he was attempting to help, did not thereafter hear Ball shout at him to

"hold it." It was Gilbert's practice not to use a "scotch block" or chock to check the wheels; and he was watching his stepson, Bobby Harvey, on the step ladder for assistance. The only other time Gilbert saw Ball was after Ball was hurt.

Bobby Harvey testified that all that was said between Ball and Gilbert was that Ball could start work on the fan belt when the truck was on the blocks. He stated that when Ball saw the wheels slipping against the block, he (Ball) grabbed the 4 x 6 block [not the scotch block or chock] and attempted to push it under the wheel from the rear. The truck came up on the blocks, and the plaintiff's hand went under the wheel. The tire spun and caught plaintiff's hand.

Ball testified that when he saw what Gilbert was trying to do, he told Gilbert he would help him. Ball said this conversation occurred when the two men were standing in front of the tractor. He said, "I told him I would help him, get in the truck and back it up on those blocks." He admitted that Gilbert did not ask him for help. Ball testified that he picked up a scotch block which was on the floor. It was a piece of 4 x 4 wood about 18 inches long. He stooped down near the left-rear wheels of the tractor and held the block in his left hand. When the truck backed up on the blocks, Ball put the block in front of "the wheels." It is not clear which wheels Ball referred to. At one place he said it was "the *front* left dual of the tractor"; i. e., in front of the forward wheels of the tandem. At another place he said it was the "front of the *rear* wheel." Ball also testified that his hands were between the two left-rear wheels. There is no picture or drawing of the truck in evidence, and we are unable to get or to convey an accurate picture of the facts concerning the wheels. In any event, Ball said he hollered to Gilbert to "hold it." Though Ball had squatted near the wheels, he thought Gilbert could see him; and he testified that "I just assumed he heard me when I hollered at him . . . hold

it and I'll scotch it for you." He said, "It looked like he [Gilbert] was looking at me." There was some noise in the grease room when the truck's diesel motor was accelerated, but Ball said that the motor at this time was idling and he thought Gilbert would hear him. He said Gilbert had applied his brakes when he hollered at Gilbert to hold it when he attempted to put the block in front of "the wheels." Suddenly, he said, the wheels spun and his hand and the block were carried under the wheel. At another place Ball testified that he supposed that the truck rolled back down and twisted the block and his hand under the tire. Ball's hand was seriously injured.

It is difficult to ascertain from the Statement of Facts exactly what Ball did. He testified several times that it all happened so fast he did not really know what happened. When he was asked to demonstrate what he did, or to show on a blackboard where the wheels, the scotch block, the 4 x 6 blocks and the people were, he testified that he held the block "this a way," put it under "like that," and "I come down and put it here like this," "by this wheel," "about a foot over in between there," and that he put the block "between both those wheels." He did say that the truck had already been backed onto the blocks and had stopped, and that he had then shouted to Gilbert to "hold it" when he squatted, facing the left-rear tandem wheels, and shoved the scotch block with his left hand into the wheels. The wheels then spun and caught his hand, block and all. It is not clear whether the wheels spun forward or backward. Ball did not say which way it spun; Bobby Harvey said "backward." Respondent Ball in his Reply Brief takes the position that it is immaterial which way the wheels moved.

Ball said he had done the same operation thousands of times. He thought it was necessary to do that [insert the block] "to keep it from rolling off those blocks." He stated that "when you start back up on those blocks, they'll scoot." Ball said he did not think what he was doing was so dangerous. He was asked if it would not have been safer to slide the block into the wheels instead of placing it with his hands. He answered, "You can get hurt that way too"; that it would be just as dangerous to stick your hand "over there" as it would be to "scoot it in from the side."

The jury found that immediately before the accident Ball shouted to Gilbert to stop the vehicle, but that Gilbert did not hear Ball; that Gilbert failed to listen for Ball's shout but this was not negligence on Gilbert's part. It found that Gilbert failed to keep a proper lookout for Ball and that this failure was a proximate cause; that Gilbert knew, or by the exercise of ordinary care should have known, that Ball was in a position of danger, and that Gilbert failed to warn Ball of his dangerous situation; that this constituted negligence and proximate cause; that the plaintiff corporation operated a system for lifting vehicles which was dangerous to persons close by, and that this was negligence and a proximate cause.

On the contributory negligence issues, the jury found that the plaintiff Ball was not negligent in attempting to place the blocks next to the truck wheels under the circumstances; that Ball was not negligent in going near or about the rear of the truck on the occasion in question; and that the plaintiff did not fail to notify Gilbert that he was going to place the wooden block next to the truck wheels.

With regard to assumed risk, the jury found that Ball was an invitee on defendant's premises, and we shall assume that he was. The jury further found that immediately before the accident, Ball was in a position of danger; that the plaintiff Ball actually knew and realized the danger of attempting to place the blocks next to the truck wheels, and that the "plaintiff assumed the risk of danger, if any, in attempting to place the wooden blocks next to the truck wheels"; and that "the danger of the truck moving while attempting to place the

blocks under the truck wheels was open and obvious . . . ."

This Court in McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954), clearly stated that there are two legal theories, wholly aside from the plaintiff's own contributory negligence, for denying liability in a suit against an owner or occupier of land brought by an invitee for injuries. This Court there said, "One [of these two theories] rests on the judicial concept that there is no breach of any duty the landowner owes to his invitees. The other arises out of the doctrine of volenti non fit injuria—voluntary encountering of risk—which is regarded as a defense to all negligence actions. In this state both theories are recognized." 271 S.W.2d at 393. These two legal theories were again explained in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963).

The Court of Civil Appeals treated this case as a "no duty" case. It cited and relied upon Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup.1963), which held that in "no duty" cases involving activities, the activity generally must be rigidly circumscribed and easily predictable. Also cited was McElhenny v. Thielepape, 155 Tex. 319, 285 S.W.2d 940 (1956), a "no duty" case involving a limited amount of motion.

■ It is our opinion that the facts and the jury findings bring this case within the second of the two doctrines set out in McKee v. Patterson; i. e., that of *volenti non fit injuria*. The requirements for such a defense are (1) the plaintiff has knowledge of facts constituting a dangerous condition or activity; (2) he knows the condition or activity is dangerous; (3) he appreciates the nature or extent of the danger; and (4) he voluntarily exposes himself to this danger. It is our opinion that the jury findings set out above substantially fulfill these requirements. The jury found that immediately before the accident, Ball was in a position of danger; that he actually knew and realized the danger of attempting to place the blocks next to the truck wheels; and that he "assumed the risk of the danger, if any, in attempting to place the wooden blocks next to the truck wheels."

It is true that there is no issue inquiring as to whether the plaintiff voluntarily exposed himself to the risk. On the other hand, it is undisputed that the plaintiff volunteered to do the acts which he performed. He admitted that Gilbert did not ask for his help and that he volunteered it. There was no objection to the issue which inquired whether "plaintiff assumed the risk of the danger." Under the circumstances, it is our opinion that the finding that the plaintiff assumed the risk of the danger in attempting to place the wooden blocks next to the truck wheels is the equivalent of finding that Ball voluntarily exposed himself to the risk in attempting to place the wooden blocks next to the truck wheels.

Counsel for plaintiff Ball contends that this case is governed by cases such as Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953), and Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951). In each of those cases the plaintiff was aware of some danger but did not know or appreciate the particular danger. In the *Triangle Motors* case, the plaintiff appreciated the danger of falling through an open, unguarded elevator shaft and had lain down on the floor to avoid that danger. He did not know the elevator was above him. It was held that he did not assume the risk from which he was injured, being struck by the descending elevator. Similarly, in Wood v. Kane Boiler Works, the plaintiff knew of and appreciated certain dangers involved in his work, but his injury resulted from a defect about which he had no knowledge.

■ In this case, the plaintiff himself knew and realized that the wheels might move. He had told Gilbert to get in the truck and to back it up on the blocks. He testified that he attempted to put the scotch block or chock under the wheels "to keep it from rolling off those blocks."

The risk was that the wheels would move or come off the blocks. He testified that while he did not regard the operation as particularly dangerous, a person could get hurt either by "scooting the block under the wheels" or by placing the block there with his hand as he did. He realized that the blocks would be forcibly moved when the wheels moved. Referring to the 4 x 6 blocks, he testified that "when you start backing up on those blocks, they'll scoot." As to these blocks, the jury was entitled to believe the testimony of Bobby Harvey that the plaintiff Ball was attempting to push one of the 4 x 6 blocks under the wheel as it was moving in reverse when he was injured. Under the circumstances, it is our opinion that the evidence fairly supports the jury finding that Ball "actually knew and realized the danger of attempting to place the blocks next to the truck wheels," and that he "assumed the danger, if any, in attempting to place the wooden blocks next to the truck wheels." •

The jury having found that the plaintiff Ball was in a position of danger, that plaintiff did know, did appreciate and did assume the risk (voluntarily exposed himself to the risk), the plaintiff cannot recover. The trial court, therefore, should have granted the defendant's motion for judgment on the verdict of the jury.

The judgments of the courts below are reversed, and judgment is here rendered that plaintiff take nothing.

## ON MOTION FOR REHEARING

On motion for rehearing, counsel for Ball says that our opinion is in error in stating that there were no objections to the special issue inquiring as to whether the plaintiff "assumed the risk of the danger." No objections were contained in the transcript sent to the Court of Civil Appeals and brought to this Court. Counsel now tenders a supplemental transcript under Rule 428, Texas Rules of Civil Procedure, showing his objections to the issue. His exceptions had been dictated to the court reporter and

overruled by the trial court before argument to the jury; but they were not reduced to writing by the court reporter and filed until after our opinion had been handed down.

Rule 272, Texas Rules of Civil Procedure, authorizes the dictation of objections to the charge and their subsequent reduction to writing. The rule says that it will be sufficient if the written objections are "filed with the clerk *in time to be included in the transcript.*" [Emphasis added.] Assuming, without deciding, that we may consider these objections thus brought to our attention for the first time, the point is still not well taken. The objections did not relate to the submission of the conclusion that the plaintiff assumed the risk. Nor did they suggest that the inquiry should be whether the plaintiff voluntarily exposed himself to the risk. The objections made were that the submission of the issue on assumed risk would constitute a double submission of contributory negligence; would constitute a double submission of "open and obvious"; would serve to confuse the jury; and that there was no evidence, or in the alternative, insufficient evidence to support its submission.

The jury found that Ball actually knew and realized the danger of attempting to place the blocks next to the truck wheels; and we adhere to our opinion that the finding of the jury that Ball "assumed the risk of the danger . . . in attempting to place the wooden blocks next to the truck wheels" is the legal equivalent to a finding that he voluntarily exposed himself to the risk.

The motion for rehearing is overruled.

NORVELL, Justice.

I concur. The tendered supplemental transcript comes too late. This Court cannot decide a case upon a different record than that filed in the Court of Civil Appeals.

SMITH, J., concurs in this opinion.