Rebecca Parker GREENWOOD, Appellant,

v.

LOWE CHEMICAL COMPANY, Appellee.

No. 97.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

April 24, 1968.

Rehearing Denied May 22, 1968.

David J. Nagle, Houston, for appellant.

Royce R. Till, Thomas P. Sartwelle, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellee.

BARRON, Justice.

This suit was brought by Rebecca Greenwood under the Texas Death and Survival Statutes for damages resulting from the death of her husband, Charles F. Greenwood. Greenwood was a construction worker employed by a Richard Greenwood (no relation), who in turn had a contract to do certain work for the defendant, Lowe Chemical Company. On the day of the accident made the basis of this suit, Charles F. Greenwood was placing an aluminum ladder between a scrubbing tower and an open scrubbing pit or vat containing about 95% hot water and 5% acid and chemicals. The space was narrow between the tower and the pit, and deceased suddenly stepped backward causing one of his legs to enter the pit. He could not maintain his balance and he floundered and fell completely into the pit. He was critically burned and his death resulted some four days later.

The principal business of Lowe Chemical Company, appellee-defendant, was the manufacture and regeneration of chemicals and acid. In the manufacturing process appellee maintained on its premises, in the normal operation of its business, covered and uncovered concrete pits or vats containing various types of corrosive liquids. Appellee also maintained on its premises a complex device denominated a scrubber. In conjunction with the scrubber, and located approximately three to four feet from it, the appellee maintained two open concrete pits which were used to hold and circulate scrubber water back into the scrubber. These scrubber pits did not have a railing or cover and were completely open and exposed. The scrubber water solution was composed of approximately 95% water as well as certain amounts of corrosive chemicals. The exact temperature of the scrubber water was unknown but it was very hot, and on cold days the pits would emit steam. On January 19, 1965, the deceased, while working on the scrubber with a carpenter, Eddie Hergert, backed and fell into one of these scrubber pits.

Charles F. Greenwood, the deceased, was in the employ of an independent contractor doing work for Lowe Chemical Company. On the date of the accident contractor Greenwood and his employees, including decedent, had been working on appellee's premises for several months. All employees on appellee's premises had been warned of the dangers of the pits, and it was common knowledge that they contained hot water and harmful chemical liquids. Contractor Greenwood testified that both he and the decedent had warned other employees to be careful around the scrubber pits. Between the sidewall of the scrubber and the edge of the vats is about three or four feet, and one could narrowly walk between the scrubber and the vats. Work was proceeding on the north side of the scrubber, and Hergert, a co-worker, told the deceased just before the incident causing his death, to bring a section of a 16-foot extension ladder around to the south side of the scrubber. At the time Hergert had walked off about 20 feet away from the vat and had his back to the area where Charles F. Greenwood was working. The vat into which Greenwood inadvertently stepped and fell was between seven and eight feet square and about 30 to 36 inches deep; the sides were made of concrete, extending about six inches above the ground, and curved all the way around—the top of the curbing was rounded. The curbing on the vats was about five inches thick at the point where it extended above the ground. These vats were not covered over, and there was no fence or railing or any other

type of protective device around them or near them. There was no paint on the curbing, no reflectors, and no signs to remind workmen of the danger involved. The surface area between the scrubber and the vat was concrete with a rough finish. The distance between the two vats was four feet. On the premises of appellee there were several other uncovered vats of a similar nature and type. Some of the vats were covered.

Appellant, Mrs. Greenwood, alleged that appellee failed to exercise care commensurate with the risk of harm and extent of injury likely to occur and that such was negligence; that appellee failed to place a fence or rail around the vat in question which would have been adequate to prevent the accident, and that appellee failed to roof-over the top of the vat with a cover which would have been adequate to prevent a person in the position of Charles F. Greenwood from falling into the vat. Appellant further alleged that each failure was negligence and a proximate cause of the accident and resulting death of decedent, Greenwood. Appellant alleged that the open vats checkerboarding the premises constituted exceedingly dangerous instrumentalities for workmen on the premises, and that the appellee had an affirmative duty to protect invitees and other such as Charles F. Greenwood from the extra-hazardous and dangerous conditions on the premises regardless of general knowledge of the dangers.

The appellee, Lowe Chemical Company, pleaded in its answer that the occupier of the land owed an invitee no duty to warn or protect invitees against dangers which were open and obvious, and it further pleaded that the condition was open and obvious to the decedent and invoked the defense of volenti non fit injuria. Contributory negligence and unavoidable accident were also pleaded by appellee. On a hearing appellee's motion for summary judgment was granted by the trial court on the basis of depositions and affidavit submitted to the court, and the trial court rendered judgment that appellant, Mrs. Greenwood, take nothing of defendant, Lowe Chemical Company. Mrs. Greenwood has properly perfected her appeal from the trial court's summary judgment.

It is clear to us that the maintenance of premises in such a manner as Lowe Chemical Company maintained its premises at the time of and prior to the sustaining of injuries and the death of Charles F. Greenwood is near the ultimate in danger to workmen on the property. Men were called upon to work around several unprotected vats of deadly hot water and lethal chemicals. The only protection the vats contained was a six-inch curb around each vat, which was probably a hindrance rather than a help. No handrails or guardrails or other protective devices were installed by appellee, and no reason for not installing them was shown. Any workman on the premises was required daily to be constantly alert, and every moment of his attention was required to guard against what to us appears to be sudden death or serious bodily injury. Such attention was hardly possible to a man with work on his mind. At any moment a failure to heed the dangers of the open pits might have spelled disaster. That was exactly what happened here and which had almost happened only a short time before on these identical premises.

■ It is undisputed that decedent was employed by Richard H. Greenwood, the contractor employed by appellee, and that the contractor was on appellee's premises to perform a contract with appellee. Accordingly, the contractor and his employee, the decedent, were invitees on the premises of appellee. McKee, General Contractor, Inc. v. Patterson, 153 Tex. 517, 271 S.W. 2d 391; Delhi-Taylor Oil Corp. v. Henry, 416 S.W.2d 390 (Tex.Sup.).

■ The law is clear that the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 431, 20

A.L.R.2d 853; Hall v. Medical Bldg. of Houston, 151 Tex. 425, 251 S.W.2d 497, 500. But the cases hold that the landowner's duty is to protect his invitees from hidden dangers of which the landowner knows, or of which he should know in the exercise of ordinary care. The general rule is that if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then the occupier owes them "no duty" to warn or to protect the invitees. This is said to be so because there is "no duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and full appreciation thereof. Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.); Harvey v. Seale, 362 S.W.2d 310 (Tex.Sup.); Houston National Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374.

■ Based upon the undisputed facts, it is manifest that decedent knew generally of the location of the pits, knew generally that they were uncovered and unguarded, and he knew that they were filled with a hot, noxious liquid. It is not clear, however, whether decedent knew the deadly effect of a fall into one of the pits, though he knew it would be to some extent dangerous. He had been working on the premises for several months. These facts may be also applicable to the defense of volenti non fit injuria. The requirements of the latter defense were recently set out in J. & W. Corp. v. Ball, 414 S.W.2d 143, 146 (Tex.Sup.):

"(1) the plaintiff has knowledge of facts constituting a dangerous condition or activity; (2) he knows the condition or activity is dangerous; (3) he appreciates the nature or extent of the danger; and (4) he voluntarily exposes himself to this danger."

The final element is not necessary in "no duty" cases because if there is no duty owed to the plaintiff, he cannot create a duty by voluntarily exposing himself to a known and appreciated risk. See Halepeska v. Callihan Interests, Inc., supra, 371 S.W.2d at p. 380.

■ But the rules and authorities above cited are based upon facts which require that a plaintiff voluntarily and directly encounter the known risk with full appreciation of the nature or extent of the danger. It is not sufficient that the plaintiff have knowledge that there is some danger in the particular undertaking. Decedent was not working on the vat. See Smith v. Henger, supra, 226 S.W.2d at p. 434. He must have knowledge of the particular risk which he voluntarily incurs and a full appreciation of the danger which leads to his injury. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60. There the plaintiff knew and appreciated the risk of falling down an unguarded elevator shaft but not of the danger which caused his injury, though it might have been presumed that all dangers in an elevator shaft should have been known and appreciated. In the present case, the decedent was placing a ladder in the space between the scrubber and the vat to work on the scrubber when he somehow lost his balance and could not avoid stepping backward and falling into the unguarded and open vat nearby. He did not encounter the vat willfully and directly. The open and unprotected vat gave rise to a situation which rendered the premises more than ordinarily dangerous for workmen on the premises. A guardrail or protective cover around the vat probably would have prevented the injury and death of Greenwood. If the decedent had been trying to ascend the ladder, and if he had known the ladder was dangerous, or if the concrete on which it was standing knowingly had been slick or unsafe, a situation which occurred in the McKee case would have been involved. There a direct encounter would have taken place. Many similar illustrations could be given.

We cannot say as a matter of law that decedent took a known risk by stumbling or falling into the open vat involuntarily. The risk he was voluntarily encountering at the time had to do with the ladder and the scrubber. He did not "voluntarily" back into a deadly vat of hot water and chemicals, nor was an intelligent choice necessarily involved. The vat was incidental to and apart from decedent's activities at the time. Decedent fell and was fatally injured by reason of a fact originating separately and unconnected with the vat. We hold that there are jury issues presented concerning these questions and the alleged negligence of appellee in failing to provide decedent a safe place to work, to-wit: whether failure to provide guard rails or protective covering around the vats was negligence proximately causing or cooperating to cause the accident and other similar issues. See Ellis v. Moore, 401 S.W.2d 789, 793 (Tex. Sup.); Triangle Motors of Dallas v. Richmond, supra, 258 S.W.2d at pp. 63 and 64; Wood v. Kane Boiler Works, Inc., 150 Tex. 191, 238 S.W.2d 172; Brown v. Lundell, 162 Tex. 84, 344 S.W.2d 863, 870. Appellee owed decedent a duty of care unless under the circumstances decedent had a full understanding and appreciation of the extent of the danger.

As said in the case of Sinclair Refining Co. v. Winder, 340 S.W.2d 503 (Tex.Civ.App.), writ ref.:

"Whether there is a duty on the owner of premises to take precautions against injury to an invitee from dangers of which the latter is aware, depends on whether the invitee 'voluntarily encounters' the danger condition 'of his own free will and as a result of an intelligent choice.' *In determining the owner's duty, the conduct of the invitee must be looked to.* The owner's knowledge and appreciation is only the initial inquiry. If this is established, knowledge and appreciation by the invitee must be shown. There yet remains the issue as to whether the invitee voluntarily exposed himself to the danger known and appreciated by him. 'Even if voluntary exposure to risk be not pleaded as a defense, the duty question would still be present,' but the qualification to the general rule of the owner's duty 'exists only when the invitee, confronted with * * * a condition of which he knows, *containing dangers which he appreciates, voluntarily encounters them'*". (Emphasis added).

Appellee would have us apply the hard rule of cases such as Thomas v. Quatermaine, 18 Q.B.D. 685 (Ct. of App. 1887), to this case, where a brewery employee working near a boiling vat and a cooling vat in the same room fell backward into the cooling vat and was severely scalded and burned. Beneath the boiling vat was a board which plaintiff needed to use as part of the cover for the cooling vat. The board was difficult to dislodge. Plaintiff pulled hard on it, and it suddenly came loose causing plaintiff to fall into the vat. There the English court, in 1887, held for the defendant with a dissent, on the doctrine of volenti non fit injuria. See Greenhill, Assumed Risk, 20 S.W.Law J. 1, 4 et seq. We refuse to apply any such doctrine under the evidence in this case as a matter of law. Antiquated thinking involving rugged and arms-length individualism is no longer appropriate in this kind of case, and the harsh rule sought to be applied here must be kept within justifiable and reasonable limits. See Ellis v. Moore, supra, 401 S.W.2d p. 792, and Halepeska v. Callihan Interests, supra, 371 S.W.2d at 380. See 44 Tex.L.Rev. 1054.

From the facts in this record it is plain to us that the premises belonging to appellee were exceptionally dangerous and extra-hazardous to an invitee regardless of a general knowledge of danger. At the time and place in question the decedent was required to work where he did under his employer's contract with Lowe Chemical Company. To quit his job would have been an unreasonable requirement.

The facts show that he thought he could work in safety. But when he lost his balance he backed into the open vat unintentionally and received a fatal injury. Section 343A, Restatement of the Law of Torts (2d Ed.), says:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added).

■■ We think the possessor-appellee should have anticipated harm to an invitee on the premises despite general knowledge of the dangers caused by the vats. Especially is this true when the invitee's balance was lost while he was working on something else, when his fall into the deadly vat was beyond his control, and when he may not have had, under the circumstances, a full appreciation of the extent of the danger. We think appellee had some duty to provide ordinary safety to invitees on its premises under these circumstances. See 40 Tex. Jur.2d, Sec. 37, p. 502, et seq.; Robert R. Walker, Inc. v. Burgdorf, 150 Tex. 603, 244 S.W.2d 506, 509.

■ Appellant's decedent did not of necessity willfully and intelligently expose himself to such danger. See Restatement of the Law of Torts, Sec. 893, Comm. "c", Illus. 5. To say that a landowner is required to keep his premises in a reasonably safe condition for his invitees is an empty phrase unless some minimal duty of care is required of him when he clearly should anticipate harm, regardless of knowledge, in a dangerous condition of this kind. Failure to provide any type of safety devices against this type of extreme danger is clearly unreasonable.

■ Different inferences may be drawn from the undisputed facts, and all testimony must be considered from the standpoint most favorable to the plaintiff-appellant. LeMaster v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224. We believe that fact issues exist on the questions of "no duty," volenti non fit injuria, negligence, proximate cause and unavoidable accident.

■ The presumption is that the deceased exercised ordinary care for his own safety. Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, 483; 40 Tex.Jur.2d, Sec. 141, p. 663. We think that all of the issues should be considered by a jury. See Lang v. Henderson, 147 Tex. 353, 215 S.W.2d 585; Texas & P. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332; Blanks v. Southland Hotel, Inc., 149 Tex. 139, 229 S.W.2d 357; Walgreen-Texas Co. v. Shivers, 137 Tex. 493, 154 S.W.2d 625; Triangle Motors of Dallas v. Richmond, supra; McAfee v. Travis Gas Corp., 137 Tex. 314, 153 S.W.2d 442, 447. See also Keeton, Assumption of Risk and the Landowner, 22 La.L.Rev., 108; 22 S.W.Law J., 8–11.

The judgment of the trial court is reversed and remanded.

TUNKS, Chief Justice (dissenting).

I respectfully dissent. I am of the opinion that the judgment of the trial court should be affirmed on the authority of Delhi-Taylor Oil Corp. v. Henry, (Tex. Sup.), 416 S.W.2d 390; J & W Corporation v. Ball, (Tex.Sup.), 414 S.W.2d 143; Halepeska v. Callihan Interests, Inc., (Tex.Sup.), 371 S.W.2d 368; Harvey v. Seale, (Tex.Sup.), 362 S.W.2d 310; McKee, General Contractor, Inc. v. Patterson, 153 Tex. 517, 271 S.W.2d 391.